**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CHARLES KING, ANDRE BROWN,      )
CHOIKE HILL, THOMAS GILBERT,    )
NELSON MUNIZ, ANTHONY SMITH,  )
and ANDRE McGREGG,                  )
                                        )
          Plaintiffs,          )
                                        )    No.    06 C 204
      v.                      )
                                        )    Judge Robert W. Gettleman
ROGER E. WALKER, Director of      )
Illinois Department of Corrections,  )
JESSE MONTGOMERY, Deputy Director of )
Parole Operations,              )
                                        )
          Defendants.       )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs filed an eight-count amended class action complaint seeking injunctive relief pursuant to 42 U.S.C. § 1983, alleging violations of plaintiffs' constitutional rights under the Due Process Clause of the Fourteenth Amendment. Plaintiffs, parolees from the Illinois Department of Corrections ("IDOC"), allege that defendants' policies and practices deprive class members of the right to a prompt preliminary parole revocation hearing near the site of the alleged parole violation. Plaintiffs filed a motion for class certification on January 17, 2006. Defendants have filed a motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6), and they oppose class certification. Plaintiffs filed a motion for a preliminary injunction on January 24, 2006, which defendants also oppose. For the reasons explained below, defendants' motion to dismiss is denied, plaintiffs' motion for class certification is granted, and plaintiffs' motion for a preliminary injunction is granted.

# FACTS[1]

Defendant Roger Walker is the director of IDOC, and defendant Jesse Montgomery is the deputy director of parole operations for IDOC. The seven named plaintiffs are parolees from various IDOC institutions in Illinois. Each named plaintiff was arrested in Cook County, Illinois between August 2005 and February 2006 for an alleged parole violation based on a new criminal charge,[2] and taken to the Cook County Jail. Each named plaintiff denies that he committed a parole violation. Plaintiffs allege that it is defendants' policy and practice to transfer alleged parole violators from the Cook County Jail to Stateville Correctional Center ("Stateville") in Joliet, Illinois, and then to transfer them to the institution from which they were paroled. According to plaintiffs, this creates a "system which guarantees that no Cook County parolee will receive a prompt preliminary parole revocation hearing at or near the site of the alleged parole violation," and that Cook County parolees "will not have counsel or favorable witnesses present when the preliminary parole revocation is finally held."

Plaintiffs Charles King ("King"), Chioke Hill ("Hill"), Thomas Gilbert ("Gilbert"), Anthony Smith ("Smith"), Nelson Muniz ("Muniz"), and Andre McGregg ("McGregg")[3] allege that within 10 days of their arrests they were transferred to Stateville without receiving a

---

[1]For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. <u>Travel All Over the World, Inc. v. Kingdom of Saudi Arabia</u>, 73 F.3d 1423, 1428 (7th Cir. 1996).

[2]Plaintiffs do not state in the amended complaint that each named plaintiff's alleged parole violation was a new criminal charge, but they concede this in their briefs.

[3]The court notes that Smith, Muniz, and McGregg allege that they were transferred to Stateville"within days" of arrest.

preliminary hearing and without waiving their right to a preliminary hearing.[4]  Several named

plaintiffs were then transferred from Stateville to more remote IDOC facilities without receiving

a preliminary hearing.  Gilbert and King were transferred from Stateville to the Logan

Correctional Center in Lincoln, Illinois, which is approximately 165 miles from Chicago.  Hill

was transferred to Western Illinois Correctional Center in Mount Sterling, Illinois, which is in

excess of 100 miles from the site of his alleged parole violation.  Plaintiff Andre Brown

("Brown") fails to allege when he was transferred from the Cook County Jail, but at the time of

the filing of the amended complaint he was incarcerated at the Big Muddy Correctional Center in

Ina, Illinois.  Plaintiffs' brief in support of a preliminary injunction asserts that Brown was

transferred to Stateville after "a few days" in the Cook County Jail.

King, Brown, Hill, Muniz, and McGregg allege that they have been in custody for more

than 10 business days without receiving a preliminary parole revocation hearing.  McGregg has

been in custody for more than 150 days without a preliminary or final parole revocation hearing.

Gilbert had not received or waived a preliminary hearing at the time he was transferred to Logan,

where he remains incarcerated.  Smith was arrested for an alleged parole violation on February

3, 2006, and has not waived his right to a preliminary parole revocation hearing.  Plaintiffs fail to

allege that Smith and Gilbert had not received preliminary hearings at the time the amended

complaint was filed on February 14, 2006.

The criminal charges against Hill were dismissed based on a finding of no probable cause

and dismissed on January 17, 2006.  At the time of the filing of the amended complaint more

---

[4]The court notes that Counts II through VIII each re-allege paragraphs 1 through 30 of
Count I.  Some of paragraphs 1 through 30 contain general allegations.  Others, however, contain
allegations specific to King only, and cannot apply to the other named plaintiffs.

than a month later, Hill remained incarcerated at the Western Illinois Correctional Center on his alleged parole violation. The criminal charges against King were dismissed on December 28, 2005. King never received a preliminary parole revocation hearing, and remained in custody until February 21, 2006, after his full parole revocation hearing at which he was found not to be a parole violator.

Plaintiffs seek to certify a class of plaintiffs defined as Cook County Parolees "who have been or will be arrested for parole violations in Cook County, Illinois and who will then be: a) taken into custody at Cook County Jail; b) transferred from Cook County Jail within 10 days without a preliminary parole revocation hearing; c) transferred from the Cook County Jail to the Illinois Department of Corrections; and d) held without a preliminary parole revocation hearing for more than 60 days." The court notes that although the putative class definition states that it applies to individuals held longer than 60 days, plaintiffs' amended complaint alleges that, "Absent exigent circumstances, a preliminary parole revocation hearing should be held within 10 days of arrest and the hearing should be held at or near the site of the allege violation, but in no case in excess of 60 miles from the site of the alleged violation." Plaintiffs' briefs suggest that they intend to include anyone held more than 10 business days without a parole hearing. In addition, several of the named plaintiffs were held more than 10 days but fewer than 60, further suggesting a typographical error in the class definition.[5] The court considers the class definition

---

[5]The court notes that on the date amended complaint was filed, Smith had been in custody for fewer than 10 business days. Similarly, plaintiffs fail to allege that Gilbert was held for more than 10 business days without a preliminary parole revocation hearing, although they do allege that he was transferred to Stateville within 10 days of his arrest without a hearing.

to include individuals held without a preliminary parole revocation hearing for more than 10 business days.

**DISCUSSION**

**I.      Motion to dismiss**

In ruling on a motion to dismiss for failure to state a claim, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. Travel All Over the World, 73 F.3d at 1428.  A complaint should not be dismissed for failure to state a claim unless there is no doubt that the plaintiff cannot prove a set of facts that would entitled her to relief based on her claim.  Pressalite Corp. v. Matsushita Electric Corp. of America, 2003 WL 1811530, at *2 (N.D.Ill. Apr. 4, 2003).

Plaintiffs argue that their re-incarcerations on alleged parole violations without a preliminary parole revocation hearing violated the Due Process Clause of the Fourteenth Amendment and the Supreme Court's decision in Morrissey v. Brewer, 408 U.S. 471 (1972). According to plaintiffs, parolees are held for weeks or even months before receiving a preliminary hearing, and that when the preliminary hearing is finally held, they are significantly limited in their ability to prepare and present a defense to the alleged violation.  The lengthy delay creates a risk of stale evidence, and holding the hearings as much as 200 miles from the site of alleged violations limits parolees' ability to call favorable witnesses.  Defendants argue that plaintiffs' amended complaint should be dismissed under Rule 12(b)(6) because they provide the process required under Morrissey.  For the reasons stated below, defendants' motion to dismiss is denied.

Morrissey and its progeny establish a two-tiered system to safeguard parolees' due process rights in the revocation process. Although Morrissey does not set forth precise guidelines for a preliminary parole revocation hearing, the Supreme Court held that the preliminary hearing must provide "some minimal inquiry" and must be conducted "at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest." 408 U.S. at 485. The Court explained, "Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable grounds to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." Id. According to Morrissey, a preliminary parole revocation hearing must be held "while information is fresh and sources are available" because of the frequently substantial lag time between arrest and final revocation, and the fact that parolees may be held far away from the site of arrest. Id. The preliminary hearing need not be held by a judicial officer, but may be conducted by any "independent officer," including a probation officer other than the officer assigned to the parolee. Id. at 486.

In the instant case, defendants argue that preliminary parole revocation hearings are unnecessary because parolees' constitutional rights are sufficiently protected by probable cause hearings held for warrantless arrestees under Gerstein v. Pugh, 420 U.S. 103 (1975). Gerstein holds that the Fourth Amendment requires a determination of probable cause by a judicial officer "promptly" after a warrantless arrest. Defendants also assert that "they are under court order to take custody and control of parolees from Cook County," pursuant to a October 30, 2003, order issued by Judge Marovich in Duran v. Sheahan, case No. 74 C 2949, modifying a consent decree

regarding pre-trial detainees held at the Cook County Department of Corrections ("CCDOC"). According to defendants, the instant suit creates a risk of inconsistent judgments with Duran.

Defendants' second argument is easily disposed of by reading Judge Marovich's order in Duran, which does not direct defendants to do anything. Instead, Judge Marovich modified the Duran consent decree to permit the Sheriff of Cook County, "at his discretion," to transfer to the custody of IDOC any person housed at the CCDOC who has been previously sentenced to IDOC for an unexpired sentence of confinement. Alleged parole violators, including plaintiffs in the instant case, are considered to have unexpired sentences of confinement. Parolees are not directly at issue in Duran, and the Duran consent decree, as modified, does not require that alleged parole violators be transferred to IDOC at any point. Moreover, Duran does not excuse the failure to provide timely preliminary parole revocation hearings prior to transferring parolees to IDOC, or IDOC's failure to provide hearings within 10 days of a parolee's arrest.

Both parties cite extensively to prior lawsuits, opinions, settlements, and consent decrees from this district addressing claims similar to those presented here. Several of these cases involve IDOC, parolees arrested in Cook County, and the same plaintiffs' counsel as the instant case. Although plaintiffs do not seek to enforce any of them directly, they attach several consent decrees to their complaint and the stipulated dismissal of Willard v. Snyder. Willard, case No. 01 C 1884, was filed on September 18, 2001, and assigned to Judge Kennelly. The class plaintiffs in Willard were "technical" parole violators – parolees charged with violating administrative conditions of their parole – who made allegations similar to plaintiffs' allegations in the instant case. The Willard plaintiffs dismissed that case pursuant to IDOC's agreement that alleged technical parole violators will be held within 60 miles of Cook County, provided a

7

preliminary parole revocation hearing within 10 business days of imprisonment, and given the opportunity to present witness testimony live or through a telephonic link.  It appears that defendants' conduct as alleged in the instant case may violate agreements referenced in the stipulation to dismiss in Willard.  Plaintiffs here, however, were not parties to Willard, which was not a certified class action and ended in a non-enforceable stipulated dismissal rather than a consent decree or settlement agreement.  Plaintiffs are thus not required to reinstate Willard or to attempt to enforce the other consent decrees to proceed with their claims here.[6]

Plaintiffs also attach three additional consent decrees from this district, entered in Pinzon v. Lane, case No. 87 C 4542, Kareem Faheem-El v. Klincar, case No. 84 C 2561, and Downie v. Klincar, case No. 89 C 2937.  Without specifically arguing that any of these decrees requires dismissal of the instant case, defendants argue that the instant case creates the risk of inconsistent verdicts and that plaintiffs should be required to join their claims to one of the earlier suits.  Downie is not relevant here because it applies to final revocation hearings only.  Although the other earlier cases certainly address similar issues and, as plaintiffs assert, suggest that defendants have long been aware of the significant constitutional complaints concerning the parole revocation system, neither the Faheem nor the Pinzon decree precludes the instant lawsuit because neither is directly on point with the claims here.

The Pinzon decree requires preliminary hearings within 10 business days of a parolee's arrest, but the decree applies to parolees who are detained in Cook County pending a final parole

---

[6]Indeed, in their brief in support of the motion to dismiss, defendants ask the court to "strike [Willard] from the record" because the stipulation contains a confidentiality provision that defendants claim plaintiffs violated by attaching it to their complaint.  This court seriously doubts the enforceability of such a confidentiality provision in an agreement by a public official, but as stated above concurs that Willard is largely irrelevant to the instant case.

revocation hearing.  Plaintiffs in the instant case were held at Cook County Jail only for a short period of time before being transferred to IDOC facilities outside Cook County to await their revocation hearings.  Regarding preliminary hearings, the <u>Faheem</u> decree establishes the due process to which a parolee is entitled, including the opportunity call and confront witnesses, but it does not establish a time-frame for preliminary hearings.  In addition, neither the <u>Pinzon</u> nor the <u>Faheem</u> decree places geographic limits on the location of the preliminary hearing, and plaintiffs' claims in the instant case are based in part on defendants' policy of moving parolees to remote facilities prior to the preliminary hearing.

Accordingly, none of the prior court orders and other filings in separate litigations, require dismissal of the instant case.

Defendants' legal argument in support of their motion to dismiss is that a <u>Gerstein</u> probable cause hearing, which determines whether a suspect arrested without a warrant may be detained, is a constitutionally valid substitute for a <u>Morrissey</u> probable cause hearing, which determines whether an alleged parole violator may be detained.  Cook County General Order No. 86-1 requires <u>Gerstein</u> probable cause hearings to detain individuals arrested without a warrant. According to defendants, "To require both a <u>Gerstein</u> hearing and the preliminary [<u>Morrissey</u>] hearing creates an unnecessary redundancy that would burden an already overburdened criminal justice system for no ascertainable reason."  Defendants fail to cite any case law in support of their novel, and ultimately unpersuasive, assertion that the two due process requirements are constitutionally equivalent.

Plaintiffs do not challenge they were provided sufficient <u>Gerstein</u> hearings within 10 days of their arrest and that they were not prevented from presenting evidence to counter a finding of

Gerstein probable cause.  Plaintiffs argue, however, that Gerstein hearings are not Constitutional substitutes for Morrissey hearings because Morrissey hearings, unlike Gerstein hearings, are adversarial and Morrissey requires greater due process protections than Gerstein, including the opportunity to call witnesses and the right to cross examine adverse witnesses.  For the reasons discussed below, the court agrees.

The Supreme Court held in Gerstein that a state must provide "a fair and reasonable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." 420 U.S. at 125.  Gerstein does not require the adversarial safeguards of counsel, confrontation, cross-examination, and compulsory process of witnesses at probable cause hearings.  Id. at 119-22.  It is also not constitutionally required that an arrestee be present at the Gerstein hearing, and an unverified police report may be sufficient to detain an arrestee.  Id. at 120.  Plaintiffs in the instant case allege that no witnesses are called at the Gerstein hearings to prove the parole revocation allegations and that hearing officers rely on the investigative report as conclusive proof of the alleged parole violations.  Plaintiffs also claim that they were denied the opportunity to call witnesses on their behalf.

Although a preliminary parole revocation hearing is, like a Gerstein hearing, less formal than a full trial or a final revocation hearing, the Supreme Court in Morrissey set the due process floor higher than in Gerstein.  Under Morrissey, in addition to notice of the preliminary hearing and the alleged parole violations, there must be some provision for live testimony.  408 U.S. at 486-87.  "At the hearing the parolee may appear and speak on his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer."  The

parolee may also request that a person who has given adverse information on which the parole revocation is to be based is made available for questioning in his presence.  Id.

Indeed, the Supreme Court recognized in Gerstein that Morrissey requires greater due process protections for parole revocation than probable cause to detain hearings under the Fourth Amendment, including permitting the parolee an opportunity to collect favorable evidence while it is fresh and accessible.  Referring to the parole revocation process established in Morrissey, the Gerstein Court noted, "That preliminary hearing, more than the probable cause determination required by the Fourth Amendment, serves the purpose of gathering and preserving live testimony, since the final revocation hearing frequently is held at some distance from the place where the violation occurred."  Gerstein, 420 U.S. at 121 n.22.

Plaintiffs cite several opinions and consent decrees in similar cases that have distinguished between probable cause for purposes of the Fourth Amendment and for purposes of the Due Process Clause.  For example, regarding preliminary hearings, the Faheem decree requires that, "At the preliminary parole revocation hearing parolees shall have the opportunity to call witnesses in accordance with [Morrissey]" and to "confront and cross examine adverse witnesses who have testified or presented evidence against the parolee, unless the hearing officer specifically finds good cause for not allowing confrontation."  The Faheem decree thus undermines defendants' argument that an adversarial Morrissey hearing is not required.

In addition to the distinction between the Fourth Amendment and Due Process Clause precedent, Gerstein and Morrissey hearings are distinguishable based on the result of each.  A finding in a Gerstein hearing of probable cause to detain an arrestee does not prevent release on bail.  A finding of probable cause in a Morrissey hearing, in contrast, extinguishes a parolee's

right to judicially set bail.  Faheem-El v. Klincar, 841 F.2d 712, 727-29 (7th Cir. 1988).  This supports plaintiffs' argument that preliminary parole hearings must provide more robust due process protections because the loss of liberty is potentially greater.  Although each involve a "probable cause" determination, Gerstein and Morrissey hearings serve separate purposes and protect distinct constitutional rights, and thus require different levels of process.  Defendants' argument that Gerstein hearings fulfill the due process mandate of Morrissey therefore fails.

In support of their argument that Gerstein hearings alone are sufficient, defendants rely on an Illinois statute that states that a preliminary parole hearing within 10 days is not required when an individual's parole is revoked pursuant to new criminal charges and there has been a judicial finding of probable cause. 730 ILCS § 5/3-3-9(c).[7]  Defendants also point to the Pinzon consent decree, which states that a preliminary hearing need not be held within 10 business days if there has been a finding of probable cause under the predecessor statute to § 5/3-3-9.  Plaintiffs do not directly challenge the constitutionality of 730 ILCS § 5/3-3-9.  According to plaintiffs, there is not necessarily a conflict between § 5/3-3-9 and Morrissey because "probable cause" as used in  § 5/3-3-9(c) and Pinzon should be read as requiring an adversarial preliminary hearing as required by 725 ILCS § 5/109-3[8], rather than a Gerstein probable cause determination.

---

[7]"A person charged with violating a condition of parole or mandatory supervised release shall have a preliminary hearing before a hearing officer designated by the Board to determine if there is cause to hold the person for a revocation hearing.  However, no preliminary hearing need be held when revocation is based upon new criminal charges and a court finds probable cause on the new criminal charges or when the revocation is based upon a new criminal conviction and a certified copy of the conviction is available."  730 ILCS 5/3-3-9(c).

[8]Ill. Rev. Stat. ch 38, § 109-1 et seq., cited in the Pinzon consent decree, is the same as 725 ILCS § 5/109 et seq. of the current Illinois Criminal Code.  Section 5/109-3 describes preliminary hearings for warrantless arrestees.  It includes the opportunity to cross examine witnesses and requires the prosecution to present evidence under oath.  725 ILCS § 5/109-3.

Defendants do not directly address the distinction between an adversarial § 109-1 hearing and a Gerstein hearing, and they fail to challenge the distinction drawn by plaintiffs. Plaintiffs do not argue that a § 109-1 hearing would be insufficient under Morrissey. In fact, plaintiffs suggest that a proper § 109-1 hearing may be an acceptable substitute. The court need not resolve this issue because a state statute, of course, cannot trump the Constitution. In addition, defendants assert that parolees receive Gerstein hearings, not § 109-1 hearings, and thus the constitutionality of preliminary parole revocation based on a § 109-1 hearing is not before the court.

Defendants attempt to further conflate probable cause for revocation purposes under Morrissey with probable cause to detain by asserting that several of the named plaintiffs were indicted by a grand jury. Defendants fail, however, to cite any support for their suggestion that a grand jury proceeding, at which a defendant is not present, is any more a valid substitute for a Morrissey hearing than a Gerstein hearing. Defendants also attach significant portions of the named plaintiffs' IDOC files and criminal records to the motion to dismiss, and refer to them throughout the briefs. Defendants' suggestion that guilt or innocence is relevant to a due process inquiry ignores a bedrock principle of constitutional law, and unnecessarily attempts to insert extraneous and inflammatory details about the named plaintiffs' alleged crimes and criminal history. None of this information is relevant to the constitutionality of defendants' parole revocation procedures, and the court will not consider it.

In addition, defendants' actions regarding named plaintiffs King and Hill contradict the argument that the two probable cause determinations, and the Morrissey and Gerstein standards, are equivalent. King remained incarcerated for nearly two months after the charges against him, for which he was arrested and charged with a violation of his parole, were dropped. Similarly, at

the time  the amended complaint was filed on February 14, 2006, more than a month after the charges against him were dismissed based on a finding of no probable cause, Hill remained incarcerated.  Hill and King's continued incarceration bolster plaintiffs' claims that parolees' constitutional rights are compromised by defendants' policies and practices that disregard <u>Morrissey</u>, and that <u>Gerstein</u> and <u>Morrissey</u> probable cause findings are distinct.

Plaintiffs also claim that defendants' policies and practices prevent parolees from receiving sufficient preliminary parole hearings when they are finally held.  The <u>Morrissey</u> Court's recognition of the factors of time and distance that require a prompt and close preliminary hearing to permit alleged violators a meaningful opportunity to challenge their revocation proves prescient here.  <u>See</u> 408 U.S. at 485.  Plaintiffs assert that after being transferred to IDOC custody parolees have little, if any access to telephones, and they are not given sufficient notice of the time and the location of the preliminary parole revocation hearing.  As a result, parolees cannot make arrangements for witnesses to appear at the remote hearings or otherwise prepare their revocation defense.  The significant time lapse between the alleged violation and the hearing also hinders parolees' defense.  Defendants assert that arrestees are given the opportunity to "appear, speak, and present evidence regarding the issue of probable cause," and are permitted to be represented by counsel at preliminary parole hearings.  It is therefore a question of fact if the delay and distance prevents parolees from receiving sufficient <u>Morrissey</u> hearings.  Defendants do not, however, deny that, in violation of <u>Morrissey</u>, it may be weeks or months after arrest before a parolee receives a preliminary parole hearing, or that the hearings are held in prisons far remote from the place of the alleged violation.

Accordingly, the court denies defendants' motion to dismiss plaintiffs' amended complaint.

## II.     Class certification

Plaintiffs to seek to certify a class under Rule 23(b)(2) for declaratory and injunctive relief.

Fed. R. Civ. P. 23, which governs class actions, requires a two-step analysis to determine if class certification is appropriate. First, plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993). These elements are a prerequisite to certification, and failure to meet any one of them precludes certification of a class. Second, the action must also satisfy one of the conditions of Rule 23(b). Joncek v. Local 714 International of Teamsters Health and Welfare Fund, 1999 WL 755051, at *2 (N.D. Ill. Sept. 3, 1999) (and cases cited therein). Relevant to the instant case, a class can be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

In the instant case, defendants do not challenge the adequacy of representation of the named plaintiffs[9] or putative class counsel. Most of defendants' objections to class certification are premised on the argument that Gerstein hearings are sufficient for parole revocation

_____

[9]As noted above, however, it is not clear from the complaint that Brown, Gilbert, and Smith are members of the putative class. The complaint fails to allege that Smith and Gilbert were held for more than 10 business days without a preliminary hearing, or that Brown was transferred from Cook County Jail to an IDOC facility within 10 days of his arrest.

purposes.  In particular, defendants argue that the proposed class lacks typicality and

commonality because it includes parolees who are accused of technical violations of the

administrative conditions of their parole and parolees arrested on new crimes.  The former group

of parolees would not receive <u>Gerstein</u> hearings, but are entitled to parole revocation hearings.

<u>Gerstein</u> hearings, however, as discussed above, are not sufficient substitutes for preliminary

parole revocation hearings as provided in <u>Morrissey</u>.  The putative class claims are thus typical

of technical and non-technical alleged violators because they arise from defendants' generally

applicable parole revocation policies, which plaintiffs allege delay preliminary parole hearings

for extended periods of time and impede parolees' ability to prepare and present a defense to the

alleged violations.

There are also questions of law and fact common to the proposed class.  All class

members allege that they were denied a preliminary parole revocation hearing in contravention

of <u>Morrissey</u> as a result of defendants' policies and practices.  Defendants assert that factual

differences between proposed class members, such as the type of alleged violation and each

plaintiff's status in the revocation process, require individual determinations.  Such facts are not

material to the constitutional issue.  That is, neither the events that precipitated a parolee's

revocation charge nor the ultimate disposition of the underlying charges or the parole revocation

are necessary to determining whether a parolee's due process rights were violated during the

revocation.  Pursuant to the proposed class definition, putative class members share common

material facts, including: (1) more than 10 days without a <u>Morrissey</u> hearing; (2) transfer to

IDOC facilities that deny a parolee a real opportunity to present favorable evidence; (3) hearings

without an opportunity to cross examine the source of the evidence of the alleged parole violation; and (4) hearings without any witness testimony.

Defendants' argument that the proposed class does not share a common legal issue is equally without merit. Defendants argue that the inclusion of technical and non-technical violators in the proposed class defeats commonality because parolees arrested on new charges receive hearings pursuant to Gerstein and technical violators receive hearings under the stipulated dismissal in Willard.[10] Defendants assert that proving the named plaintiffs' claims would not prove the claims of all proposed class members because technical violators do not receive Gerstein hearings. In fact, this argument cuts against defendants because if a Gerstein hearing is not sufficient, thus violating the due process rights non-technical violators, then the due process rights of technical violators, who do not even receive Gerstein hearings, are being violated as well. Similarly, any constitutional injury caused by holding parolees far away from the site of the alleged violation and the actual procedures of Morrissey hearings would apply to all parolees. Morrissey does not distinguish between technical and non-technical violators, and thus both types of violators are entitled to constitutional protections established by the Supreme Court.

Defendants' argument that the proposed class lacks definiteness because it includes "parole violators who have been or will be arrested for parole violations in Cook County" is also unpersuasive. A sufficiently definite class exists if its members can be ascertained by reference to objective criteria. Wallace v. Chicago Housing Auth., 224 F.R.D. 420, 425 (N.D.Ill. 2004).

---

[10]The court notes that the stipulation to dismiss in Willard was signed by the parties to that case only; it is not a consent decree or an enforceable order from the court.

In the instant case, the proposed class is clearly defined by objective criteria, including the length of time a parolee is held without a preliminary parole hearing and if a parolee is transferred to IDOC custody. Including future parolees does not destroy the definiteness of the class because future class members must also meet the class definition, and whether to include them will not require individual determinations by the court. Plaintiffs are thus correct that if defendants' policies violate the Due Process Clause and they remain in force, the class expands daily.

Defendants' final challenge to class certification is based on the other litigations in this district, including <u>Willard</u> and <u>Duran</u>. As discussed above, although these suits address parole revocation procedure, they do not preclude plaintiffs' claims here or prevent the certification of a class in the instant case. The only case that might arguably have an impact here is <u>Willard</u>, which applies to technical violators. Even if <u>Willard</u> were somehow relevant to the instant case, the court notes that defendants do not assert that they are in compliance with <u>Willard</u>. If some or all technical violators receive the due process agreed to in <u>Willard</u>, they would not be members of the proposed class because they would have had preliminary revocation hearings within 10 business days of arrest, and the class includes parolees who are held for more than 10 days without a hearing. If technical violators do not receive the due process agreed to in <u>Willard</u>, they are members of the proposed class here and defendants' failure to honor the agreement in <u>Willard</u> certainly does not rescue them from the constitutional claims in the instant case.

Accordingly, the court grants plaintiffs' motion to certify a class defined as: Cook County Parolees who have been or will be arrested for parole violations in Cook County, Illinois and who will then be: a) taken into custody at Cook County Jail; b) transferred from Cook County Jail within 10 days without a preliminary parole revocation hearing; c) transferred from

the Cook County Jail to the Illinois Department of Corrections; and d) held without a preliminary parole revocation hearing for more than 10 days. The court certifies King, Hill, Muniz and McGregg as class representatives, and certifies plaintiffs' counsel as class counsel.[11]

## III.    Preliminary injunction

Plaintiffs seek an injunction, but fail to submit a proposed injunction and offer several versions of possible injunctions. In the amended complaint, plaintiffs ask the court to "issue a preliminary injunction barring defendants from continuing their policy of transferring parolees from the Cook County Jail before the parolee has had, or waived, a preliminary parole revocation hearing" and to permanently enjoin defendants from continuing their policy as alleged. In their motion for a preliminary injunction plaintiffs seek to require defendants to hold preliminary hearings within 10 business days of arrest. In the reply in support of the motion for preliminary injunction, plaintiffs seek to require defendants "to submit a plan that provides for a preliminary hearing within 10 business days of arrests" that includes "some provision for witness testimony" at the preliminary hearing, and that defendants be "enjoined from their current practice of relying on agent reports or Gerstein hearings." The descriptions of the injunctions in the motions and briefs, however, do not address the location of the preliminary hearing or transfer from Cook County Jail. For the reasons discussed below, plaintiffs are entitled to a preliminary injunction prohibiting defendants' current parole revocation practices during the pendency of this case, and are granted leave to file a proposed preliminary injunction order consistent with this opinion.

---

[11]For the reasons discussed previously, the amended complaint does not allege that the remaining defendants (Brown, Gilbert, and Smith) meet the class definition. Defendants have not challenged plaintiffs' counsels' qualifications to serve as class counsel.

To obtain a preliminary injunction, the movant must demonstrate: (1) some likelihood of success on the merits; (2) absence of an adequate remedy at law; and (3) that it will suffer irreparable harm absent injunctive relief. Foodcom International v. Barry, 328 F.3d 300, 303 (7th Cir. 2003); Publications International, Ltd. v. Meredith Corp., 88 F.3d 473, 478 (7th Cir. 1996). After these threshold requirements are met, the district court then balances the irreparable harm to the movant against the harm that would be suffered by the non-movant, as well as non-parties, if preliminary injunctive relief were granted. Id. See also Ty. Inc. v. GMA Accessories, Inc., 959 F.Supp. 936, 939 (N.D.Ill. 1997), aff'd 132 F.3d 1167 (7th Cir. 1998). In balancing the harms to parties and the public, the court uses a "sliding scale" approach, so that "the more likely it is the movant will succeed on the merits, the less the balance of irreparable harms need weigh toward its side...." Abbott Lab. v. Mead Johnson & Co., 971 F.2d 6, 12 (7th Cir. 1992).

The Seventh Circuit has noted that the threshold for demonstrating a likelihood of success on the merits is low. See Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999). Plaintiffs need only demonstrate a "better than negligible chance of succeeding." Id. (citations omitted). A court must first determine whether the plaintiff has been deprived of a protected interest, and then determine what process is due. Sonnleitner v. York, 304 F.3d 704, 711 (7th Cir. 2002); Townsend v. Vallas, 256 F.3d 661, 673 (7th Cir. 2001).

In the instant case, plaintiffs have cleared this hurdle. Defendants do not deny that parolees are systematically denied a preliminary parole revocation hearing for weeks, and that the practice of transferring parolees to IDOC facilities within a few days of their arrest results in parolees being incarcerated at least 60 miles, and as many as 250 miles, from Cook County, prior to receiving a preliminary or final parole revocation hearing. Defendants' established policy of

considering a Gerstein hearing a valid substitute for a Morrissey hearing denies a parolee any possibility of release on bail because defendants interpret the Gerstein finding of probable cause to detain to be sufficient to automatically find probable cause on the parole violation. As discussed above, a Gerstein hearing is not a substitute for a preliminary parole revocation hearing, and the findings of such a hearing do not necessarily control a probable cause determination under Morrissey. In addition, transferring parolees out of Cook County almost immediately and holding preliminary hearings at great physical and temporal distance from the time and place of alleged conduct prevents parolees from effectively contesting their revocation with witnesses, consulting with defense counsel, and further investigating still-fresh information. As the Supreme Court noted in Gerstein and Morrissey, distance and time lapses put parolees at a distinct disadvantage.

Plaintiffs offer several affidavits from experienced criminal defense attorneys detailing the typical proceedings, or lack therefore, at Gerstein hearings. According to the affidavits, in nearly every case, after the case is called and the attorneys identify themselves, the judge holds, "finding of probable cause to detain based on signed complaints." No witness testifies and there is no opportunity to challenge the investigative reports used to satisfy Gerstein. This perfunctory process is confirmed by dozens of transcripts of Gerstein hearings in Cook County attached by plaintiffs to their reply in support of the motion for preliminary injunction, and flouts Morrissey. Plaintiffs also assert that officers conducting preliminary parole hearings have no knowledge of the Gerstein hearing, which further undercuts defendants' claim that a Gerstein finding is a proper substitute for a preliminary parole revocation hearing under Morrissey. Accordingly,

plaintiffs have demonstrated a more than reasonable likelihood of success on the issue of unconstitutionality of defendants' existing practices.

Plaintiffs must also make a threshold showing that any remedy at law would be inadequate. The Seventh Circuit has noted, "In using the term 'inadequate' we do not meant wholly ineffectual, we mean seriously deficient as a remedy for the harm suffered." Cooper v. Salazar, 196 F.3d 809, 817 (7th Cir. 1999). In the instant case, plaintiffs argue that there is no adequate remedy at law because defendants have absolute immunity under federal law. Defendants assert that because there is "no bar" to plaintiffs bringing their suit in a court where immunity would not attach, plaintiffs have failed to make the required threshold showing of inadequate legal remedies. Defendants' argument misses the mark because even if damages were available in another forum - and defendants do not identify such a forum - damages are often inadequate remedies for constitutional violations. As Judge Shadur noted in Pinzon v. Lane, which involved due process claims regarding parole revocation hearings, "Even if plaintiffs could ultimately collect damages for defendants' unconstitutional conduct in keeping plaintiffs in custody without a hearing, they cannot be compelled thus to sell their rights to liberty for some amount in damages." 675 F.Supp 429, 431 (N.D.Ill. 1987)

Defendants' argument that plaintiffs have failed to demonstrate irreparable harm is also without merit. Plaintiffs allege that they were held on alleged parole violations in violation of their Due Process rights. As the Supreme Court noted in Morrissey, "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." 408 U.S. at 482 (re-imprisonment strains or severs whatever family and employment ties the parolee has established

while on parole).  Stripping a parolee of these rights for any period of time clearly causes

irreparable harm to the parolee and, as the Morrissey Court highlighted, causes great harm to the

parolee's family and community.  Defendants argue that the named plaintiffs cannot demonstrate

any harm because two have been released after full parole board revocation hearings, and five

have been indicted.  Neither of these occurrences, however, makes amends for the failure to

provide a Morrissey hearing.  In addition, defendants do not contest that the same policies and

practices that violated the named plaintiffs' constitutional rights remain in place.  Each time a

parolee is incarcerated on the basis of a Gerstein hearing alone, therefore, another individual is

harmed.  Even if complying with the Constitution could be considered a "harm" to defendants, it

is perforce outweighed by the harms to plaintiff.  See Pinzon, 675 F.Supp at 432.

    In support of their final argument that the public interest weighs against a preliminary

injunction, defendants cite the Morrissey Court's description of the State's interest in

incarcerating parolees who are charged with new criminal charges as "overwhelming," 408 U.S.

at 483.  Defendants, however, ignore the next line of Morrissey, in which the Supreme Court

makes clear that the State's important interests do not override the individual's due process

rights, even the conditional liberty rights of a parolee.  "Yet, the State has no interest in revoking

parole without some informal procedural guarantees."  Id.; see also Pinzon, 675 F. Supp at 435

(affirming constitutionally protected interest in remaining at liberty on parole).  In addition,

revoking parole without proper constitutional protections also reduces the chance that a parolee

will complete his period of parole successfully and remain in the community as a productive and

law-abiding citizen, which is in the public's best interest.

Contrary to defendants' suggestion that plaintiffs are attempting to interfere with the State's ability to incarcerate parole violators, plaintiffs do not challenge the State's right to revoke parole based on new criminal charges, and they do not seek to dismiss the parole revocation charges against any plaintiff or otherwise grant anyone his liberty. Instead, they merely seek the constitutional due process protections to which they are entitled as parolees, which include the right under Morrissey to have a prompt preliminary parole revocation hearing at or near the place of the alleged parole violation or arrest. Defendants' argument that procedural protections beyond a Gerstein hearing are redundant and inefficient, like the presumption of unfitness rejected in Stanley, "runs roughshod" over critical interests and places individuals' due process rights in peril. 405 U.S. at 657. In the instant case, King and Hill's continued incarceration without a preliminary parole revocation hearing for more than a month after the new charges against each were dropped is an example of the dire consequences of defendants bypassing a required and crucial procedural step. As the Supreme Court has made clear, constitutional rights cannot be sacrificed in favor of cheaper and easier procedures, and government agencies may be required to expend additional resources to ensure sufficient constitutional protections. Id. The balance of harms, therefore, does not favor defendants.

Accordingly, plaintiffs' motion for a preliminary injunction is granted, and plaintiffs are directed to submit a proposed preliminary injunction order on or before May 26, 2006.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is denied.  Plaintiffs' motions for class certification and a preliminary injunction are granted.  Plaintiffs shall submit to the court a proposed preliminary injunction order on or before May 26, 2006.  The matter is set for status hearing on June 1, 2006, 9:30 a.m.  For that hearing, the parties are directed to confer and discuss appropriate class notice.


**ENTER:**      **May 8, 2006**

_____
**Robert W. Gettleman**
**United States District Judge**